***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Stanback along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms, with some modification, the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The date of injury by accident is May 25, 1999.
4. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer/employee relationship between the parties with defendant-employer being insured by Zurich U.S. Insurance.
5. All parties admit that on May 25, 1999, the plaintiff sustained to the left knee an injury by accident arising out of and in the course of his employment.
6. The plaintiff's average weekly wage was $657.16 yielding a compensation rate of $438.13.
7. For the plaintiff's compensable left knee injury, he was out of work from June 29, 1999 through July 26, 1999 and was paid temporary total disability benefits during that period of time. The plaintiff resumed his regular duty work with the employer on August 30, 1999 and was paid his full wages from that date through February 7, 2000. The plaintiff was out of work from February 8, 2000 through March 27, 2000. He returned to light duty work for the employer earning his full wages from March 28, 2000 through April 16, 2000. The plaintiff went back out of work on April 17, 2000 and did not return to work for the employer thereafter. His employment was terminated on August 1, 2000.
8. The plaintiff received short-term disability benefits from the employer totaling $4,089.28 for the periods of February 8, 2000 to March 26, 2000 and April 25, 2000 to September 11, 2000. These benefits were paid at the rate of $125.00 per week and were provided to the plaintiff as an employment benefit without cost to him.
9. Documents stipulated into evidence include the following:
 a. Stipulated Exhibit #1: Industrial Commission Forms Forms 18 for both IC file numbers; Forms 19 for both IC file numbers; Form 28 for IC# 952437; Forms 33 and 33R for both IC file numbers; Form 60 for IC# 952437; Form 61 for IC# 025845.
 b. Stipulated Exhibit #2: The plaintiff's medical records.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a 46-year-old male who worked for defendant-employer as a CO tester. As part of his job duties, the plaintiff tested commercial ovens. His job required lots of walking.
2. On May 25, 1999, the plaintiff suffered an admittedly compensable injury to his left knee. Defendants accepted the plaintiff's left knee claim and paid him temporary total disability benefits for the time he was out of work.
3. Following his left knee injury, the plaintiff treated with Dr. Brian Szura, who is board certified in orthopedic surgery with a specialization in sports medicine and orthopedic procedures. Dr. Szura performed a diagnostic arthroscopy and a partial medial meniscectomy on the plaintiff on June 30, 1999. On October 12, 1999, Dr. Szura determined that the plaintiff was at maximum medical improvement and gave the plaintiff a 12% permanent partial disability rating to his left leg. Dr. Szura saw the plaintiff eleven times between June 18, 1999 and October 12, 1999. Dr. Szura testified that, and the undersigned finds that the plaintiff did not complain of or have any right knee symptoms between June 18, 1999 and October 12, 1999.
4. The plaintiff was out of work from June 29, 1999 and July 26, 1999. When the plaintiff returned to work with defendant-employer on July 26, 1999, he worked five hours per day light duty. On August 30, 1999, the plaintiff resumed full duty and worked full duty until February, 2000.
5. On February 7, 2000, the plaintiff reported to his supervisor that his right leg was hurting and that he was going to the doctor. When asked whether the plaintiff hurt his right knee on the job, the plaintiff stated "No, it just started hurting." The plaintiff stated that his right knee began hurting on or about February 5, 2000.
6. The plaintiff filed a claim for his alleged right knee condition. The Form 18 for the plaintiff's right knee claim states that he began having pain in his right knee in October, 1999.
7. The plaintiff contacted Dr. Szura in February of 2000 and asked if Dr. Szura could document whether the plaintiff had previously complained of problems with his right knee. Dr. Szura told the plaintiff that he could not state if the plaintiff had previously complained of problems with his right knee. Dr. Szura then received a letter indicating that the plaintiff wished to be examined with respect to his right knee. On December 8, 2000, Dr. Szura examined the plaintiff's right knee and found the examination to be normal. It was Dr. Szura's opinion that he could not state with any degree of medical certainty that the right knee injury was related to the plaintiff's May 25, 1999 left knee injury.
8. On June 22, 2000, the plaintiff fell down some steps and injured his back. The plaintiff did not file a claim for his back injury, and the record indicates that the plaintiff is not making any claim for any back injury or contending that the plaintiff is entitled to any benefits for his back injury.
9. On August 28, 2000, the plaintiff saw Dr. Dwayne Patterson, who specializes in physical medicine and rehabilitation. The plaintiff saw Dr. Patterson primarily because of back pain. At that time, the plaintiff reported to Dr. Patterson that his right knee problems began sometime around February of 2000. Dr. Patterson placed restrictions on the plaintiff of no lifting greater than 10-15 pounds, no bending or stooping, limited walking, and no climbing. Dr. Patterson testified, and the undersigned finds that all of the restrictions except for the walking or climbing would relate to the plaintiff's back. Dr. Patterson testified, and the undersigned finds that the plaintiff has no work restrictions due to his left knee.
10. The plaintiff has not looked for work at anytime since last working for defendant-employer in February of 2000.
11. The undersigned find that the plaintiff did not sustain an injury to his right knee on or after May 25, 1999, or in any way related to his left knee injury occurring on that date. The plaintiff testified at the hearing that he did not have any right knee pain and did not report right knee pain to his supervisor or employer on May 25, 1999. The plaintiff further testified that he did not injure his right knee on May 25, 1999 and stated that he is not claiming that he injured his right knee on May 25, 1999.
12. Southbend human resources manager Kathy McNeill testified that the plaintiff did not tell her that he believed that he injured his right knee on May 25, 1999. Dr. Patterson also testified that the plaintiff did not report a work-related injury to the right knee occurring in May of 1999 when the plaintiff saw Dr. Patterson on August 28, 2000. The plaintiff is unable to pinpoint a specific time when his right knee problems began. The plaintiff testified at the hearing that he told Dr. Szura in late August of 1999 or early September of 1999 that he was having problems with his right knee. On the Form 18 that the plaintiff filed for his right knee condition, he stated that he began to have pain in his right knee in October of 1999. Conversely, the plaintiff reported to Dr. Patterson that his right knee symptoms began sometime around February of 2000. The plaintiff likewise reported to defendant-employer that his right knee pain began in February of 2000.
13. The plaintiff saw Dr. Szura on eleven different occasions between June 18, 1999 and October 12, 1999. Dr. Szura testified, and the undersigned finds that from the time Dr. Szura began to see the plaintiff on June 18, 1999 until he released the plaintiff to return to work on October 12, 1999, the plaintiff never reported any problems with his right knee. Dr. Szura could not testify to a reasonable degree of medical certainty that the plaintiff sustained a work-related injury to his right knee on May 25, 1999. The undersigned adopts Dr. Szura's testimony in this regard.
14. The undersigned finds that the plaintiff's right knee condition is not related to his May 25, 1999 left knee injury. Dr. Szura testified that he could not state with any degree of medical certainty that the right knee injury was related to the injury that occurred to the plaintiff's left knee. With regard to whether the plaintiff suffered an injury to his right knee as a result of overuse, or altered gait or any effect on his right leg as a result of the left knee condition, Dr. Szura testified and the undersigned finds that it is impossible to make a determination that the two would be related.
15. Dr. Patterson's testimony also supports the undersigneds' finding that the plaintiff's right knee condition is not related to his May 25, 1999 injury. Even though Dr. Patterson testified that the plaintiff's left knee problems could have stressed the plaintiff's right knee, there is nothing in Dr. Patterson's medical records from his August 28, 2000 examination of the plaintiff which makes any reference to the fact that the plaintiff developed a right knee condition as a result of having to use his right knee more because of his left knee problem. Dr. Patterson also testified that there was a possibility of a relationship between the plaintiff's left knee and right knee problems, but he did not render an opinion to a reasonable degree of medical certainty. Dr. Patterson also did not review any of the plaintiff's medical records from previous treatment for his left knee. The basis for his opinion was information gathered solely from the plaintiff, along with his own examinations.
16. Dr. Patterson further testified that he would defer to Dr. Szura on the issue of causation of the plaintiff's right knee problem and stated that he would have no reason to dispute Dr. Szura's December 8, 2000 office note where Dr. Szura stated that it would not be possible with any degree of medical certainty to state that the plaintiff's right knee injury was related to the original injury to the left knee. As such, based on Dr. Szura's expertise and length of treatment and familiarity with the plaintiff's condition, the undersigned assigns greater weight to the opinions expressed by Dr. Szura regarding whether the plaintiff's original injury of May 25, 1999 could have caused his right knee problems, and as to whether the problems with the left knee resulted in problems with the right knee.
17. As of the time Dr. Szura released the plaintiff to return to work in October of 1999, the plaintiff was working full duty with defendant-employer. The plaintiff continued to work full duty until he stopped working for defendant-employer in February of 2000 as a result of his unrelated right knee injury. The plaintiff's job with defendant-employer was available to him subsequent to February of 2000. Therefore, the undersigned finds that the plaintiff's disability in this case, if any, is not a result of his May 25, 1999 left knee injury.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff did not suffer a compensable injury to his right knee on or after May 25, 1999. N.C.G.S. § 97-2(6).
2. The plaintiff's current disability, if any, is unrelated to his left knee injury, and therefore the plaintiff is not entitled to any disability compensation except for the amounts awarded herein. N.C.G.S. § 97-29.
3. The plaintiff is entitled to permanent partial disability compensation at the rate of $438.13 per week for a period of 24 weeks for the 12% permanent partial disability rating the plaintiff received to his left knee as a result of his May 25, 1999 injury. N.C.G.S. § 97-31.
4. With the exception of payment for his 12% permanent partial disability rating to the left knee, defendants have paid the plaintiff all benefits to which he is entitled under the Act.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. The plaintiff's claim for medical and compensation benefits for his right knee condition is hereby DENIED.
2. Subject to an attorney's fee approved below, Defendants shall pay the plaintiff permanent partial disability compensation at the rate of $438.13 per week for a period of 24 weeks for the 12% permanent partial disability rating the plaintiff received to his left knee as a result of his May 25, 1999 injury.
3. An reasonable attorney's fee of twenty-five percent of the sums due the plaintiff under Paragraph 2 of this AWARD is approved for the plaintiff's counsel and shall be paid as follows: twenty-five percent of the sums due the plaintiff shall be deducted and paid directly to the plaintiff's counsel.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER